UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BARNETT VALERIE, ERIK SILVERMAN, RAMSES
GRAHAM, ANTHONY PETERKIN, *and* SYDNEY
SILVERA

    *Plaintiffs*,

    v.

LEVY RESTAURANTS, INC.; LEVY PREMIUM
FOODSERVICE LIMITED PARTNERSHIP,
BROOKLYN EVENTS CENTER, LLC DBA
BARCLAYS CENTER; GIGACHEF, LLC; *and*
AARON LA GRECA, ALPHONSE LANZA *and* LISA
BREFERE *in their Individual Capacity*,

    *Defendants*.
-------------------------------------------------------------------X

**14 Civ. 4499**

**FIRST AMENDED COMPLAINT**

<u>**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY**</u>

Plaintiffs Barnett Valerie, Erik Silverman, Ramses Graham, Anthony Peterkin, and Sydney Silvera (referred to collectively as the "Plaintiffs"), by and through their counsel The Harman Firm, PC, respectfully allege as follows:

## NATURE OF THE ACTION

1. In this employment discrimination matter, Plaintiffs have suffered from systemic maltreatment and egregious abuse on the basis of race and/or disability.

2. Because of their race and/or disabilities, Defendants have illegally refused to promote Plaintiffs, reduced their work hours, and attempted to force them out of their workplace by demoting them to positions where they are unable to use their specialized skills.

3. Defendants Aaron La Greca, Alphonse Lanza and Lisa Brefere (referred to collectively as the "Individual Defendants") force Plaintiffs to endure an abusive work environment by constantly mocking employees with disabilities and subjecting them to egregiously demeaning name-calling.

4.      Plaintiffs' action seeks damages for racial discrimination in the workplace under the Civil Rights Act of 1866, 42 U.S.C.A. § 1981. The Individual Defendants subject Plaintiffs to an intolerable hostile work environment by repeatedly assailing on black employees with outrageous profanity and racially offensive language and gestures. *See* Exhibit A.

5.      Plaintiffs also seek remedies for race and disability discrimination, retaliation and hostile work environment, as well as punitive damages under the New York City Human Rights Law ("NYCHRL"), N.Y.C. ADMIN. CODE § 8-107.

## JURISDICTION AND VENUE

6.      Jurisdiction of this Court is proper under 28 U.S.C. § 1331(a) in that claims arise under federal law, specifically the Civil Rights Act of 1866, 42 U.S.C.A. § 1981.

7.      This Court has supplemental jurisdiction over Plaintiffs' NYCHRL claims pursuant to 28 U.S.C. § 1367(a) because such claims arise from a common nucleus of operative facts.

8.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred within this district.

## PARTIES

9.      At all times relevant hereto, Plaintiffs are adult individuals, residing in the County of Kings, State of New York.

10.     Plaintiffs Valerie, Graham, Peterkin and Silvera are black individuals of African-American and/or Caribbean/West Indian ethnic descent.

11. At all times relevant hereto, Plaintiff Silverman has suffered from cerebral palsy and moderately severe rhinophyma, a rare skin disorder causing abnormal overgrowth of nose glands.

12. At all times relevant hereto, Plaintiff Peterkin has suffered from blindness in one eye.

13. At all times relevant hereto, Plaintiffs were and are employees of Defendants.

14. Plaintiffs work at the kitchens of Defendant Levy Premium Foodservice Limited Partnership ("Levy Premium"), which provides food and catering services for Defendant Brooklyn Events Center, LLC DBA Barclays Center (hereinafter "Barclays"), at the Barclays Center arena located at 620 Atlantic Avenue, Brooklyn, Kings County, New York 11217.

15. At all times relevant hereto, upon information and belief, Defendant Barclays owns the Barclays Center arena and oversees its operations, including the Food and Beverage department, run by Defendant Levy Premium.

16. Upon information and belief, Defendant Gigachef, LLC (hereinafter "Gigachef") is owned, operated, and managed by Defendant Brefere.

17. At all times relevant hereto, Defendants La Greca and Lanza, who are Caucasian individuals, are the managers of Plaintiffs.

18. At all times relevant hereto, upon information and belief, Defendants Brefere and Gigachef are consultants, hired by Defendant Barclays, to direct the operations of Levy Premium. Defendant Brefere oversees the work of Plaintiffs, has authority to transfer employees, and manages workplace issues arising in the kitchens. Defendant Brefere is a Caucasian individual.

**JURY TRIAL**

19.     Plaintiffs respectfully request a trial before a jury.

**FACTUAL ALLEGATIONS**
**Background**

20.     Plaintiffs are jointly employed by Levy Premium and Barclays (the "Corporate Defendants") at the Barclays Center arena.

21.     Upon information and belief, Defendant Levy Premium operates three (3) kitchens at the Barclays Center: the 40/40 Club by American Express ("40/40 kitchen"), the Calvin Klein Courtside Club ("CK kitchen"), and Concessions.

22.     The 40/40 and CK kitchens (collectively the "premium kitchens") are the premium restaurants of Levy Premium, and demand more complex culinary skills than Concessions because of their gourmet menu. Concessions offers fast food for all Barclays customers, whereas the premium kitchens offer upscale cuisine exclusively for VIP guests.

23.     Transferring employees from the premium kitchens to Concessions is effectively a demotion because working at Concessions deprives premium cooks and chefs from using their specialized skills, and from further developing their culinary talent and experience.

24.     Each kitchen team is structured according to the following descending hierarchy: Executive Chef, Senior Sous Chef, Sous Chef, Supervisor, Lead, "Cook 1," "Cook 2," and "Cook 3."

25.     At all times relevant hereto, Plaintiff Valerie is a Senior Supervisor. He worked at the CK kitchen until being transferred to the 40/40 kitchen on or about March 2014.

26.     At all times relevant hereto, Plaintiff Silvera works as Lead at the CK kitchen.

27.     At all times relevant hereto, Plaintiffs Silverman, Graham and Peterkin worked as Cook 3 at the CK kitchen.

28.     Defendants Lanza and La Greca were employees of Defendant Levy Premium, while Defendant Brefere, and her company, Defendant Gigachef, worked for Defendant Barclays.

29.     All three (3) Individual Defendants managed, directed, oversaw and supervised the employees working in the Barclays Center kitchens.

30.     Both Corporate Defendants served as Plaintiffs' employers, as both managed, supervised, and oversaw Plaintiffs, and both exerted significant control over Plaintiffs' work environment, employee complaints, and employee discipline.

**Racial and Disability Discrimination**

31.     Beginning in or around September 2013, Defendants Lanza and La Greca began to subject Plaintiffs to an intolerable hostile work environment by repeatedly assailing on black employees with outrageous profanity and racially offensive language and gestures. On a regular and continuing basis, Plaintiffs have heard Defendants Lanza and La Greca referring to black employees, *inter alia*, as "black motherfucker," "dumb black bitch," "black monkey," "piece of shit" and "nigger."

32.     The commencement of this discriminatory behavior coincided with the Corporate Defendants hiring Defendants Lanza, La Greca, Gigachef, and Brefere.

33.     Similarly, in or around December 2013, Plaintiffs Valerie and Silvera, among other employees, heard Defendants Lanza and La Greca maliciously ridiculing Wendy Woolfork, the Human Resources ("HR") Director at Levy Premium, by saying that she is

5

"uppity" "because she is black and in management," and claiming, in substance, that she was only hired for "show."

34. Plaintiffs Valerie and Silvera have also seen Defendants Lanza and La Greca outrageously mocking Terrance Greenidge, a black employee, by making monkey gestures. In or around December 2013, Plaintiff Valerie saw La Greca and Lanza showing CK kitchen employees picture of "Beetlejuice," a cartoonish character from the "Wack Pack" of the Howard Stern Show, who is played by an African-American man who suffers from microcephaly and dwarfism. *See* Exhibit A. As they circulated the picture, La Greca and Lanza maliciously laughed and ridiculed Mr. Greenidge, saying "look at the black monkey," "look at this little black nigger!", encouraging employees to laugh, and telling all employees who were present that Mr. Greenidge resembles Beetlejuice.

35. Defendants also have licensed other employees to revile Plaintiffs Peterkin, Graham and Valerie for being black. For example, Chef Elizabeth Degori, Sous Chef of the CK kitchen, has called Plaintiff Peterkin "stupid dumb fuck" in front of the CK kitchen staff, because of her animus against dark-skinned individuals. Chef Degori has also assailed upon Plaintiff Graham with egregious profanity, an excessively aggressive tone and specious write-ups. On one occasion, Chef Elizabeth Degori, gave Plaintiff Graham a write-up for allegedly pushing an employee although there were no complaints against Graham and there was no investigation into Degori's allegations. Similarly, Plaintiff Valerie endured significant maltreatment by Darcy Tapia, Senior Catering Manager at Levy Premium, as Ms. Tapia was consistently and repeatedly aggressive, condescending and disrespectful to Plaintiff Valerie, because he is black. Upon information and belief, Ms. Tapia attempted to have Plaintiff Valerie removed from the CK kitchen due to her racial animus.

36. Defendants also force Plaintiffs to endure an abusive work environment by constantly mocking employees with disabilities, and subjecting them to egregiously demeaning name-calling. On several occasions, Plaintiffs have heard Defendants La Greca and Lanza referring to Plaintiff Peterkin as "cyclops," and "the one-eyed guy," because he is visibly blind in one eye. Plaintiff Peterkin also overheard Defendant La Greca asking "why is he [Peterkin] working here if he's blind." Similarly, La Greca and Lanza refer to Plaintiff Silverman as "the nose guy," and constantly saying comments like "his mother so [sic] ugly." Plaintiff Silvera, who supervises Plaintiff Silverman as Lead, was deeply outraged and helpless as she saw Defendant La Greca ridiculing Silverman, pretending to mimic Silverman's nose deformity by placing a piece of bread on his nose, and attempting to mimic Silverman's voice. Further, in one occasion, Plaintiff Silverman heard Defendant La Greca making fun of his uncontrollably shaky hand, which is a symptom of his cerebral palsy.

37. In addition to abhorrent profanity, humiliation and name-calling, Defendants demonstrate a pattern of systemic disability discrimination as they deliberately place employees with disabilities away from customers or in positions requiring fewer skills.

38. On or about December 2013, Defendant Brefere told Plaintiff Valerie that she was planning to relocate employees with disabilities to ensure that they remain out of the sight of customers. Defendant Brefere specifically mentioned that she did not want Plaintiffs Silverman or Peterkin to be "in sight." Consistent with this animus, Brefere isolated Plaintiff Peterkin in or around January 2014, by assigning him to work alone in the Media and Family section, apart from the rest of the CK kitchen staff, out of customers' view, and subject to arduous work conditions. The Media and Family section is a single overheated room, without ventilation.

7

39. Defendants also assail on black and disabled employees by demoting them. In or around November 2013, Defendants Lanza and La Greca effectively demoted Mr. Greenidge, because of his race and disability, by transferring to him to the carving station, and stripping him of his typical, more complex and higher-skilled responsibilities as Cook 2. Defendants also transferred Michael Wall, Shirley Powell, Karen Govan, Jennie Cadet and Toson Bartlett—all black employees—from the premium kitchens to Concessions in an effort to force them to quit their jobs. Employees consider a transfer to Concessions as the last step taken by management to encourage employees to resign. Upon information and belief, Shirley Powell, a black Cook 3, resigned because she could not tolerate the pervasive racial and disability discrimination at Levy Premium, and the ensuing hostile work environment.

40. Further, at all times relevant hereto, Defendants implement discriminatory hiring and promotion practices. Upon information and belief, the only Leads at the 40/40 kitchen who are black are individuals who were hired or promoted prior to September 2013, before the Corporate Defendants hired Defendants La Greca, Lanza and Brefere. Plaintiffs Silverman, Graham, Peterkin and Silvera have been passed for promotions despite their satisfactory employment evaluations, while newly hired or promoted employees are exclusively Hispanic individuals of lighter skin who are less competent and less qualified than the black employees who were denied promotion.

41. Defendants have sabotaged Plaintiffs' attempts to seek promotions, and have humiliated and ridiculed Plaintiffs for inquiring about opportunities.

42. For instance, when Plaintiff Silverman asked Defendant La Greca about the possibility of being promoted to Cook 2, La Greca ordered him to immediately complete a "chef test," which was not required from any applicants or candidates, included questions about tasks

8

that were not part of the duties of a Cook 2, and involved dishes that were not even part of the menu of Levy Premium.

43. Defendants La Greca and Lanza closely watched Plaintiff Silverman while he completed the chef test, in an effort to ridicule and intimidate him.

44. Defendants also evidence pervasive racial discrimination in their enforcement of workplace policies. While Plaintiff Graham received one write-up for tardiness, Mr. Pena, a light-skinned Hispanic, has not been reprimanded or written-up for repeatedly being late.

45. Also, in and around late April, Plaintiff Graham was disciplined for not wearing his gloves, although he only removed them momentarily because he cut his thumb, and non-black employees like Mr. Pena were never disciplined for repeatedly working without their gloves. In fact, Plaintiff Graham received said write-up after Director Greg Costa had been called into the kitchen because Plaintiff Graham cut his hand while working. Instead of assisting Graham, Costa gave him a specious write-up because of his racial animus, and maliciously sought to humiliate him by ordering him to complete a urine test immediately.

46. Because of their racism, Defendants also have sabotaged Plaintiffs Valerie and Silvera's leadership responsibilities, have effectively demoted them by transferring their responsibilities to non-blacks, and continue to treat light-skinned Hispanic employees more favorably. For example, on or about March 21, 2014, Defendants transferred Veronica Marte (a light-skinned Hispanic) to the CK kitchen and directed her to act as Lead, although that is not her job title and Plaintiff Silvera is the Lead of the CK kitchen. Because Plaintiff Silvera is black, Defendants sanctioned and encouraged Ms. Marte to ignore Silvera's directions as her Lead, and have begun to replace Silvera by calling her to cover events that were typically assigned to Silvera.

47. Similarly, Defendants frustrated Plaintiff Valerie's ability to exercise his job responsibilities as Senior Supervisor at the 40/40 kitchen by preventing him from managing the work of Mel Capellan, a light-skinned Hispanic Lead. Defendants repeatedly assigned Capellan supervisory duties that corresponded to Plaintiff Valerie, ordered him to act independently, and directed him to ignore Valerie's directions, although he is subordinate to Valerie.

48. Plaintiffs have repeatedly complained about the pervasive racial and disability discrimination and the ensuing abusive work environment at Levy Premium and the Barclays Center. Plaintiffs spoke to the Individual Defendants, as well as Ms. Woolfork, from HR at Levy Premium and David Loiselle, Vice President of HR of Levy Restaurants in Chicago.

49. Defendants have refused to rectify the illegal discriminatory behavior of the Individual Defendants or the hostile work environment at Levy Premium.

50. Defendant Brefere was personally in charge of investigating and addressing the complaints raised by Plaintiffs, and bore the responsibility of responding to those complaints, and ameliorating the discriminatory conditions. Defendant Brefere failed to correct the working conditions, and in fact contributed to the ongoing discrimination.

**Retaliation**

51. Upon complaining about racial and disability discrimination in the workplace, and the hostile, unequal and unfair environment they are forced to endure, Plaintiffs Valerie, Graham Silvera and Silverman suffered callous retaliation from Defendants.

52. Plaintiff Valerie, who had never received a write up during his career at Levy Premium, began to receive specious write-ups after he persistently spoke to the Individual Defendants, Ms. Woolfork and Mr. Loiselle about the unequal treatment of black and disabled employees. On March 10, 2014, Ms. Tapia harassed Plaintiff Valerie while he was following her

orders, because of her racial animus. Ms. Tapia called three (3) Caucasian managers, including Director of Operations Greg Costa to the kitchen, to berate Plaintiff Valerie in front of the staff. Plaintiff Valerie was further humiliated as Ms. Tapia ordered the other managers to physically restrain Valerie, take his employee ID and escort him out of the building. Plaintiff Valerie was consequently suspended for four (4) shifts, although Ms. Tapia did not provide any reason as to why he was maltreated or why he was disciplined. On a meeting with HR following the incident, Plaintiff Valerie found out that Ms. Tapia and the managers had falsely accused him of using foul language.

53. In retaliation for his complaints about Defendants' disparate treatment of black and disabled employees, Defendant Levy Premium demoted Plaintiff Valerie to the 40/40 kitchen and stripped him of all supervisory duties and responsibilities of running the CK kitchen. Upon being transferred, Plaintiff Valerie was no longer treated as second in command. He was no longer responsible for providing guidance to employees, directing the production of all foods, or assisting other managers in creating setting employee schedules; rather, he only was in charge of preparing and making salads, although his title involved more complex responsibilities. By contrast, Mel Capellan, a light-skinned Hispanic, performed supervisory duties at the 40/40 kitchen, although he is a Lead and Plaintiff Valerie was supposed to be his manager.

54. After demoting Plaintiff Valerie, Defendants continued to isolate and castigate him by refusing to support him in his management role of supervisor, in retaliation for complaining about the systemic discrimination at Levy Premium and the Barclays Center. For example, when Plaintiff Valerie raised concerns about Mr. Capellan's refusal to follow his directions, Chef Tourtollet told him that Mr. Capellan is not required to follow his directions because Mr. Capellan is the "go to guy," and that he needs to treat Mr. Capellan as a supervisor,

11

although, as a Lead, Mr. Cappellan should be under his supervision. Instead of allowing Plaintiff Valerie to oversee and manage employees at the 40/40 kitchen, Defendants treated Mr. Capellan as the de facto supervisor. This dismissal of Plaintiff Valerie's authority as a supervisor prevented him from fulfilling his responsibility to effectively manage the 40/40 kitchen.

55. Defendants have also retaliated against Plaintiff Graham by giving him specious write-ups for complaining about maltreatment and the failure to promote him because he is black.

56. Defendants also retaliated against Plaintiffs Silvera and Silverman by reducing their work hours for complaining about the flagrant discrimination against black and disabled employees at Levy Premium and the Barclays Center.

### FIRST CLAIM
### Race Discrimination and Hostile Work Environment under 42 U.S.C. § 1981
### (On Behalf of Plaintiffs Valerie, Graham, Peterkin, and Silvera)

57. Plaintiffs hereby reallege and incorporate every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

58. Under 42 U.S.C. § 1981, racial discrimination in employment is illegal.

59. Defendants subjected Plaintiffs Valerie, Graham, Peterkin and Silvera to pervasive, intolerable and humiliating discrimination on the basis of race.

60. The Individual Defendants created a hostile work environment for Plaintiffs Valerie, Graham, Peterkin and Silvera, all of whom are black, by constantly assailing on them with profanity, and racially offensive language and gestures. Because of their racial animus, Defendants stripped Plaintiffs Valerie and Silvera of their supervisory responsibilities and

12

transferred such responsibilities to light-skinned employees.  Defendants have also passed Valerie, Graham, Peterkin and Silvera for promotions, because they are black.

61. Plaintiff Silverman is also forced to endure a hostile work environment as he witnesses Defendants discriminating against his colleagues because they are black.

62. On numerous times, Plaintiffs complained to the Corporate Defendants about the egregious abuse they suffer at Levy Premium because of their race.  In failing to correct the heinous inequality and discrimination at Levy Premium and the Barclays Center, Defendants knowingly submit Plaintiffs to a hostile work environment, in violation of Section 1981.

63. As a result of Defendants' illegal discrimination, Plaintiffs Valerie, Graham, Peterkin and Silvera have suffered damages for past and future earnings.  Additionally, all Plaintiffs seek damages for attorneys' fees, costs, and emotional injuries in an amount to be determined at trial.

**SECOND CLAIM**
**Illegal Retaliation under the Civil Rights Act of 1866, 42 U.S.C. § 1981**
**(On Behalf of Plaintiffs Valerie, Graham, Peterkin, and Silvera)**

64. Plaintiffs hereby reallege and incorporate every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

65. Under 42 U.S.C. § 1981, it is illegal to retaliate against individuals for attempting to help others, who suffer direct racial discrimination, in asserting their Section 1981 right to equality under the law.

66. Plaintiffs Valerie, Graham, Peterkin and Silvera, while working for Defendant Levy Premium, were subjected to disparate treatment and to a hostile work environment because of their race.

67. Plaintiff Silverman was forced to endure a hostile work environment as he witnessed Defendants discriminating against his colleagues because they are black.

68. Plaintiffs properly reported to Defendants the extremely hostile and discriminatory working conditions at Levy Premium against black employees.

69. Defendants ordered Plaintiffs to continue working amid intolerable racism, and when Plaintiffs refused, Defendant retaliated against them. As a result of this retaliation, Plaintiffs suffered adverse employment actions.

70. Defendants retaliated against Plaintiff Valerie by transferring to the 40/40 Club, without providing him with managerial support, and virtually demoting him by assigning him non-supervisory duties. Defendants also gave Plaintiff Valerie specious write-ups, and refused to provide him with the support usually given to other supervisors, in retaliation for his complaints.

71. Defendants retaliated against Plaintiff Graham by giving him specious and unduly harsh write-ups that were not customarily given to similarly situated employees in the same circumstances.

72. Defendants also retaliated against Plaintiffs Silvera and Silverman by reducing their hours.

73. As a result of Defendants' illegal and ongoing retaliation, Plaintiffs suffered damages for past and future earnings. Plaintiffs seek damages for attorneys' fees, costs, and emotional injuries in an amount to be determined at trial.

## THIRD CLAIM

### Race Discrimination Under New York City Human Rights Law § 8-107
### (On Behalf of Plaintiffs Valerie, Graham, Peterkin, and Silvera)

74. Plaintiffs hereby reallege and incorporate every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

75. Section 8-107 of the NYCHRL prohibits employers from discriminating against employees because of their actual or perceived race.

76. Defendants continuously subjected Plaintiffs to heinous treatment because of their race.

77. Defendants created an incredibly hostile environment by constantly assailing on Plaintiffs Valerie, Peterkin, Graham and Silvera with profanity, and racially offensive language and gestures. Because of their racial animus, Defendants also prevented Plaintiffs Valerie and Silvera from exercising their supervisory responsibilities by instructing light-skinned employees to ignore their directions. Defendants demoted Plaintiff Valerie on the basis of his race. Further, Defendants have passed Graham, Peterkin and Silvera for promotions, because they are black.

78. As a result of Defendants' illegal and ongoing race discrimination, Plaintiffs have suffered damages for past and future earnings. Plaintiffs seek damages for attorneys' fees, costs, and emotional injuries in an amount to be determined at trial.

## FOURTH CLAIM
### Disability Discrimination Under New York City Human Rights Law § 8-107
### (On Behalf of Plaintiffs Silverman and Peterkin)

79. Plaintiffs hereby reallege and incorporate every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

15

80. Section 8-107 of the NYHRL prohibits employers from discriminating against employees because of an actual or perceived disability.

81. Defendants continuously subjected Plaintiffs to heinous treatment because of their disabilities.

82. Defendants subjected Plaintiffs Silverman and Peterkin to heinous treatment and a hostile work environment, because of their disabilities. Defendants placed Silverman and Peterkin "out of sight" because of their disabilities, have refused them promotions despite their qualifications, and consistently humiliate them in front of their colleagues by mocking them for their disabilities and subjecting them to outrageously demeaning name-calling.

83. As a result of Defendants' illegal and ongoing disability discrimination, Plaintiffs have suffered damages for past and future earnings. Plaintiffs seek damages for attorneys' fees, costs, and emotional injuries in an amount to be determined at trial.

## FIFTH CLAIM
### Illegal Retaliation Under New York City Human Rights Law § 8-107
### (On Behalf of All Plaintiffs)

84. Plaintiffs hereby reallege and incorporate every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

85. Corporate Defendants each employ more than four (4) employees.

86. Plaintiffs, while working for the corporate Defendants, are subjected to intense discrimination based on their race and/or disabilities. When Plaintiffs repeatedly complained about the extremely hostile and discriminatory working conditions they endure, Defendants retaliated against Plaintiffs by giving them specious write-ups, virtually demoting them, and/or offering them fewer hours to work.

87. Under NYCHRL § 8-107, retaliation against an employee for complaining of discriminatory conduct is illegal.

88. After Plaintiffs complained to Defendants of egregious discriminatory conduct, they were subject to retaliatory adverse employment actions, and discouraged from making additional complaints.

89. As a result of Defendant's illegal and ongoing retaliation, Plaintiffs have suffered damages for past and future earnings. Plaintiffs seek damages for lost earnings, as well as for attorneys' fees, costs, and emotional injuries in an amount to be determined at trial.

**WHEREFORE,** Plaintiffs, by and through counsel, respectfully requests judgment against Defendants as follows:

i. On the First Claim, actual damages to be determined at trial, but in no event less than one million two hundred fifty thousand dollars ($1,250,000);

ii. On the Second Claim, actual damages to be determined at trial, but in no event less than one million two hundred fifty thousand dollars ($1,250,000);

iii. On the Third Claim, actual damages to be determined at trial, but in no event less than one million two hundred fifty thousand dollars ($1,250,000);

iv. On the Fourth Claim, actual damages to be determined at trial, but in no event less than one million two hundred fifty thousand dollars ($1,250,000);

v. On the Fifth Claim, actual damages to be determined at trial, but in no event less than one million two hundred fifty thousand dollars ($1,250,000);

vi. Punitive damages;

vii. Liquidated damages;

viii. Lost wages;

    ix.    Pre-judgment interest;

    x.    Post-judgment interest;

    xi.    Attorneys' fees, disbursements and other costs; and,

    xii.    Such other and further relief as the Court may deem just and proper.

Dated: New York, New York  
        September 11, 2014

THE HARMAN FIRM, PC  
*Counsel for Plaintiffs*

/s/ Walker G. Harman, Jr.  
Walker G. Harman, Jr. [WH-8044]  
Ronnie L. Silverberg [RS-6881]  
1776 Broadway, Suite 2030  
New York, New York 10019  
(212) 425-2600  
wharman@theharmanfirm.com  
rsilverberg@theharmanfirm.com